IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CAROLYN CLARK, on behalf of the ESTATE OF TROY BURKINSHAW and on behalf of the HEIRS OF TROY BURKINSHAW<br><br>Plaintiffs,<br><br>v.<br><br>BOX ELDER COUNTY, BOX ELDER COUNTY SHERIFF'S DEPARTMENT, J. LYNN YEATES, and AUSTIN BOWCUTT,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT AUSTIN BOWCUTT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:13-cv-00079-CW<br><br>Judge Clark Waddoups |

**INTRODUCTION**

Before the court is Defendant Austin Bowcutt's ("Bowcutt") Motion for Summary Judgment. (Dkt. No. 70). Specifically, the motion addresses claims four, five, and nine, with all other claims having previously been dismissed by this court. (Dkt. No. 68). The court held oral argument on the motion on November 12, 2014 and took the matter under advisement. After carefully reviewing the parties' filings and relevant legal authorities, the court DENIES Defendants' Motion for Summary Judgment for the reasons stated below.

**BACKGROUND**

On October 26, 2012 at approximately 7:30 p.m. Deputy Bowcutt observed Troy Burkinshaw ("Burkinshaw") urinating on the westbound side of State Road 13 ("SR-13") just outside Corinne, Utah. Bowcutt was traveling eastbound on SR-13 and, by the time he turned

around, Burkinshaw had already gotten back into his vehicle, a Volkswagen Jetta, and driven off. Bowcutt proceeded to initiate a traffic stop and approached to speak with Burkinshaw when he pulled over. Burkinshaw was unable to present the officer with a drivers license and gave the officer a name, which turned out to be false. When Bowcutt returned to his police truck to check on the information given to him, Burkinshaw drove away even though the traffic stop had not terminated. Bowcutt notified police dispatch that he was initiating a pursuit and began following the Jetta, which continued traveling westbound on SR-13. Burkinshaw's speed did not exceed 50 mph and the officer did not report swerving or other driving patterns that would indicate recklessness or driving under the influence.

    Burkinshaw eventually turned into a residential area traveling at speeds that are disputed, but agreed to be between 15 and 40 mph, and after going around the neighborhood, including driving around one block several times, made a left turn into a dead-end road. Bowcutt moved his vehicle so as to block Burkinshaw from leaving, exited his truck, and began shouting at Burkinshaw to get out of the car. As Burkinshaw maneuvered his car onto the dirt and grass area on the south of the driveway in an attempt to drive around the police truck, Bowcutt stepped in front of the Jetta with his service weapon drawn and pointed at the windshield, repeating commands to stop the car. Plaintiff's experts estimate Burkinshaw was then moving toward Bocutt at a speed of approximately 2.0 to 2.8 mph. When Burkinshaw refused to stop and continued driving, Bowcutt fired three shots into the car and moved out of the way, with the Jetta ultimately crashing into some trees. Two of the bullets struck Burkinshaw, who was pronounced dead at the scene. Bowcutt testified that he was in fear for his life and fired to stop Burkinshaw's car.

## ANALYSIS

### I. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented." *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

### II. Section 1983 Claim

Plaintiff's Ninth Cause of Action asserts a claim under 42 U.S.C. § 1983 against Bowcutt, who contends that he is entitled to summary judgment under qualified immunity. "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). However, "[i]n determining whether the plaintiff has met its burden of establishing a constitutional violation that was clearly established, . . . [the court] will [still] construe the facts in the light most favorable to the plaintiff as the nonmoving party." *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009).

#### A. Excessive Force

Plaintiff argues that Bowcutt's use of deadly force constituted an unreasonable seizure in

3

violation of the Fourth Amendment. A claim that a law enforcement official used excessive force in the course of making an arrest or seizure is judged pursuant to an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Thus, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," recognizing that they are "often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Id.* at 397. This analysis requires the court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake" by looking at the facts of the particular case, "including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

The use of "'deadly force [is] justified under the Fourth Amendment if a reasonable officer in Defendants' position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others.' In other words, 'an officer's use of deadly force in self-defense is not constitutionally unreasonable.'" *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004) (citations omitted). "In assessing the degree of threat facing officers, then, we consider a number of non-exclusive factors," including "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008). "In addition to considering whether the officers reasonably believed they were in danger at the time they used force, we have considered whether

[the officers'] own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001) (internal quotation marks omitted). In the end, however, "the inquiry is always whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force." *Estate of Larsen*, 511 F.3d at 1260.

Looking at the first *Graham* factor—the severity of the crime at issue—the initial stop in this case was based on the offense of public urination, which is classified as a class C misdemeanor. UTAH CODE ANN. § 76-9-702.3(2) (2014). The violation is listed under "Offences Against Public Order and Decency" and constitutes a relatively minor offence, posing no actual risk of harm to others. *Id.* In fact, Bowcutt stated that he did not intend to issue Burkinshaw a citation. (Bowcutt Dep. p. 12:20–21) (Dkt. No. 70-2). The act of fleeing from a lawful traffic stop, however, is a felony. UTAH CODE ANN. § 41-6a-210(1)(b)(i). Nevertheless, mere flight by itself is insufficient to justify the use of deadly force. *Tennessee v. Garner*, 471 U.S. 1, 10–11 (1985). And while Bowcutt stated he could smell alcohol from the Jetta and observed a brown paper sack that appeared to be from a liquor store, he did not administer a field sobriety or breathalyzer test to see if Burkinshaw was over the legal limit, but left him in his car while he proceeded to run the name he had been given through the computer system. (Bowcutt Dep. p. 13:23–15:14) (Dkt. No. 70-2). Subsequent findings that Burkinshaw's blood alcohol content was .22 and that there was a bottle of alcohol inside the paper sack cannot be considered in this analysis because they do not fall under the knowledge of the officer at the time of the incident.

The second *Graham* factor, which is ultimately the "most important," *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011), requires the court to consider the threat posed by Burkinshaw to the public at large and whether there was an imminent risk of harm to Deputy Bowcutt. The

5

facts upon which these issues turn are highly disputed. Bowcutt contends that the pursuit posed a high risk to the public because it took place in a residential area with pedestrians, including children, and three other vehicles; that Burkinshaw increased his speed as the pursuit continued up to 40 mph; and that Burkinshaw was driving in the center or left side of the road. (Reply pp. 24–25) (Dkt. No. 82). By contrast, Plaintiff contends that there was only one vehicle and no pedestrians, that Burkinshaw operated the Jetta at speeds of 15 to 30 mph, slowing down at intersections and using turn signals at times, and could have stopped safely if others had crossed paths with the pursuit. (Opp. pp. 13, 17, 35) (Dkt. No. 77). Ultimately, these factual disputes become relevant in addressing the question of what a reasonable officer would have concluded were the risks to the public if Burkinshaw had been allowed simply to leave from the dead-end road and Bowcutt had awaited backup.

The facts of whether Bowcutt was reasonably facing imminent risk of harm to himself are also hotly disputed. The manifest intention of Burkinshaw was to escape; he did not comply with commands to stop and proceeded to drive the Jetta towards Bowcutt after the dead-end road had been blocked. Nevertheless, while the distance between Bowcutt and the Jetta was not large, the parties dispute how close the Jetta actually came and whether Bowcutt reasonably had the ability to move out of the way.[1] While Bowcutt argues that the car was bumping up against his legs, that he was backing up a fast as he could, and that he would have been hit had he slowed down to move left or right, Plaintiff contends that Bowcutt paused several times as he stood in front of the vehicle and could have moved out of the way at any time. (Reply pp. 21, 26–27) (Dkt. No. 82). Plaintiff further argues that Bowcutt's ability to get out of the way is evident from the fact that

---

[1] The argument that the dash cam video speaks for itself is unavailing because the camera did not capture the whole incident, and does not include the moment when Bowcutt stepped in front of the Jetta or the actual shooting, both of which took place outside the camera's field of view. Moreover, whether Bowcutt could have moved out of the Jetta's way prior to shooting is not resolved by the video and is the subject of competing expert testimony.

after he shot Burkinshaw he was able to jump out of the way even though the car kept moving towards him and eventually crashed into some tree several yards away. (Opp. p. 14) (Dkt. No. 77). If Bowcutt could have reasonably moved out of the way, his decision to step in front of the car and remain there when it became apparent Burkinshaw was not going to stop may be found by a jury to have been reckless and to have unnecessarily created the need to use deadly force. *See Sevier v. City of Lawrence*, 60 F.3d 695, 699, 701 n.10 (10th Cir. 1995).

As for the third *Graham* factor—whether the suspect was fleeing or resisting arrest—Burkinshaw clearly fled prior to the termination of the traffic stop and then resisted arrest by refusing to stop despite repeated commands to do so. The facts are undisputed on this issue. Balancing the three factors and looking at the facts in the light most favorable to the nonmoving party, the evidence presented by Plaintiff is sufficient for a reasonable jury to conclude that Burkinshaw posed no immediate threat to Bowcutt or the public at large and that Bowcutt unnecessarily created a circumstance in which he placed himself in danger and then acted unreasonably and unnecessarily to shoot Burkinshaw because he ignored his command to stop. From the facts proffered by Plaintiff, a jury may reasonably find that Bowcutt's use of deadly force was excessive and in violation of Burkinshaw's Fourth Amendment rights.

**B.     Clearly Established Constitutional Right**

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). "Because the existence of excessive force is a fact-specific inquiry, however, 'there will almost never be a previously published opinion involving exactly the same circumstances.'" *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (citing *Casey v. City*

*of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007)). Thus, the Tenth Circuit has adopted a sliding scale: "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004); *Morris*, 672 F.3d at 1196. In fact, the Tenth Circuit law does not always require a specific case on point. "[W]hen an officer's violation of the Fourth Amendment is particularly clear from *Graham* itself, we do not require a second decision with greater specificity to clearly establish the law." *Casey*, 509 F.3d at 1284.

At the outset, "[t]here is no question that the general principle governing the use of force is clearly established: deadly force is justified only if a reasonable officer in the officer's position would have had probable cause to believe that there was a threat of serious physical harm to himself or others." *Cordova v. Aragon*, 569 F.3d 1183, 1208–1192 (10th Cir. 2009).

*Cordova* puts officers on notice that they cannot use deadly force when responding to threats that are not imminent even if the suspect refuses to stop and is fleeing. In that case, the fleeing suspect attempted to ram police cars multiple times, had driven off the road twice to avoid spike strips, and was going at speeds between 30 and 50 mph. *Id.* at 1186. When the suspect crossed over to the wrong side of the highway, Officer Aragon exited his police car and attempted to deploy stop sticks. *Id.* at 1187. As the vehicle continued toward him, the officer claimed it was too close for him to get out of the way and was about to run him over, so he fired four or five shots, hitting the suspect in the back and killing him. *Id.* The Tenth Circuit held that where the level of force used by the officer was sufficient to cause death, but the suspect posed no immediate danger to the officer's safety (the district court's conclusion to this effect was not challenged on appeal), and the risk to third parties was substantial but not imminent, the facts in the record could constitute a constitutional violation. *Id.* at 1189-90, 1192. It then concluded that

8

Officer Aragon was entitled to qualified immunity because it was not clearly established at that time that a potential risk to unknown third parties was not sufficient to justify the use of force nearly certain to cause death. *Id.* at 1193. *Cordova* plainly states that going forward officers should be on notice that it is now clearly established that qualified immunity would not protect them if they use deadly force in circumstances where neither they nor the public are in imminent risk of serious harm. Potential risk of harm is not sufficient to justify the use of deadly force.

Here Bowcutt's actions created a risk of death to Burkinshaw that was nearly certain. Bowcutt shot directly through the windshield at the driver of a slowly moving oncoming vehicle. That action was almost guaranteed to kill the motorist. In resolving all factual disputes in favor of Plaintiff, as the court is required to do at the summary judgment stage, a jury could reasonably find that there was little risk of danger to the public by allowing Burkinshaw to escape based on the pattern of his driving behavior before Bowcutt attempted to block him and the fact that the car chase had taken place in large part in rural and residential areas with few, if any, other motorists or pedestrians. Moreover, a jury could reasonably find that Bowcutt was not in imminent danger because he could have avoided the dangerous situation by allowing Burkinshaw to proceed past him and his police truck and stopped him when backup arrived. Further, a jury could reasonably find that Bowcutt unnecessarily placed himself in the path of the oncoming car and that in any event, he could have moved out of the way. Thus, a jury could reasonably conclude that Bowcutt was not facing a threat of serious and imminent physical harm and his use of deadly force was excessive. On the other hand, a jury may view the evidence as supporting Bowcutt's argument that he was in fear for his life and that he acted appropriately to protect himself and the public. The evidence presented by the Plaintiff and the Defendants creates a clear case of disputed issues of fact which must be left to the jury to resolve.

"When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be 'properly denied.'" *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). "[S]ummary judgment motions may not be granted on any excessive force claims under § 1983 for which any genuine issue of material fact remains--regardless of whether the potential grant would arise from qualified immunity or from a showing that the officer merely had not committed a constitutional violation." *Id.* Because resolution of the disputed issues of fact must be left to the jury, summary judgment is not appropriate in this situation.

### III.   Willful Misconduct and Wrongful Death Claims

Plaintiff's Fourth Cause of Action alleges willful misconduct by Bowcutt pursuant to UTAH CODE ANN. §63G-7-102(10) (2014). To state a cause of action under that statute, Plaintiff must show "the intentional doing of a wrongful act, or the wrongful failure to act, without just cause or excuse, where the actor is aware that the actor's conduct will probably result in injury." *Id.* Plaintiff's Fifth Cause of Action for wrongful death requires that the death of the person be "caused by the wrongful act or neglect of another," UTAH CODE ANN. § 78B-3-106 (2014). To recover under Utah's wrongful death statute, Plaintiff must first establish a cause of action for willful misconduct. Unlike the excessive force analysis under *Graham*, which applies an objective standard, willful misconduct requires that the wrongful act be "intentional." Thus, in order to establish a claim under this cause of action Plaintiff must show that Bowcutt subjectively intended to commit the alleged wrongful act.

The parties dispute whether Bowcutt's decision to shoot was made in self-defense, responding to an unavoidable threat towards his life, or a deliberate choice made to avoid having to move out of the way of the oncoming vehicle. Bowcutt testified that he was not in fear of his

life when he stepped in front of the Jetta and that he only decided to shoot after hearing the car's engine rev. (Bowcutt Dep. p. 34:13–17, 42:2–7) (Dkt. No. 70-2). Plaintiff's expert Durand Begault testified, however, that his analysis of the audio portion of the police dash cam data reveals that the engine did not rev until after Bowcutt fired his weapon. (Begault Dep. p. 34:3–4) (Dkt. No. 82-10). While Bowcutt concedes that no rev can be heard in the audio, he disputes Begault's conclusion, noting that he only examined the sounds that the dash cam's microphone picked up, and could not say what sounds occurred that were not picked up by the microphone.

Plaintiff's expert Gregory Du Val also testified that based upon perception/reaction time Bowcutt had already made the decision to shoot prior to the car leaving the field of view of the dash cam because there were only .2 seconds between that point and the firing of the shots. (Du Val Dep. p. 61:24–62:5) (Dkt. No. 82-1). But Bowcutt argues that the decision to shoot was based on his belief that he was going to be run over, and that if he had slowed down to move left or right, he would have been hit. Because the question of intent is a required element and the facts are in dispute, the resolution of the issue must be left to the jury. Summary judgment thus must be denied on these two claims.

## CONCLUSION

For the foregoing reasons, the court DENIES Defendant Austin Bowcutt's Motion for Summary Judgment, (Dkt. No. 70).

SO ORDERED this 3rd day of December, 2014.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge